IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IGNACIO VARGAS
also known as
Nacho,

   Plaintiff,

     v.

JONATHON C. NELMS, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:15-CV-2400-TWT

**OPINION AND ORDER**

This is a civil rights case. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 30] and the Defendants' Motion to Exclude/Objection to Evidence of Plaintiff's Treating Physician [Doc. 38]. For the reasons stated below, the Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part and the Defendants' Motion to Exclude is DENIED.

**I. Background**

On June 22, 2014, at 2:51 A.M., the Plaintiff, Ignacio Vargas, was driving northbound on Roswell Road while under the influence of alcohol.[1] Trooper Jonathon

---

[1] Defs.' Statement of Facts ¶ 1.

Nelms, one of the Defendants, attempted to stop the Plaintiff for driving without his headlights on and for failing to maintain lane.[2] The Plaintiff initially stopped his automobile in the middle of the road.[3] This concerned Trooper Nelms and made him believe that the Plaintiff was intoxicated.[4] Trooper Nelms instructed the Plaintiff to pull his car to the right side of the road, and the Plaintiff pulled his car into an apartment complex.[5] The Plaintiff exited his vehicle and began to approach Trooper Nelms's patrol car, which caused Trooper Nelms to be concerned for his safety.[6] Trooper Nelms instructed the Plaintiff to remain in front of the car, but the Plaintiff began to glance around and then ran.[7] Trooper Nelms attempted to call for backup, but was unsuccessful.[8] While running, the Plaintiff jumped over a fence and took the fence down.[9]

---

[2]  Id.

[3]  Id. ¶ 2.

[4]  Id. ¶ 3.

[5]  Id. ¶ 4.

[6]  Id. ¶¶ 6-7.

[7]  Id. ¶¶ 8-9.

[8]  Id. ¶ 10.

[9]  Id. ¶ 11.

Trooper Nelms eventually caught up with the Plaintiff and tried to grab him.[10] The two got into a "scuffle."[11] The Plaintiff pushed Trooper Nelms off of him, continued running, and jumped over another fence.[12] At some point while the Plaintiff was attempting to get away, Trooper Nelms sprayed him in the face with OC Spray.[13] The Plaintiff kept running; Trooper Nelms lost him and returned to have the car towed and obtain the Plaintiff's identity from the passenger.[14] The Plaintiff encountered a friend, changed clothes with him, and then hid in the bushes.[15]

Cadet Parker, another officer and one of the Defendants, was the first to encounter the Plaintiff in the bushes.[16] Believing the Plaintiff to be the same person who had escaped Trooper Nelms, Cadet Parker gave verbal direction to the Plaintiff and then attempted to handcuff him.[17] The Plaintiff resisted being handcuffed.[18]

---

[10]  Vargas Dep. at 49.

[11]  Id.

[12]  Id. at 49-50.

[13]  Defs.' Statement of Facts ¶ 17.

[14]  Id. ¶¶ 18-19.

[15]  Id. ¶¶ 20-21.

[16]  Id. ¶ 22.

[17]  Id. ¶¶ 23, 25.

[18]  Id. ¶ 26.

Trooper McEntyre, another one of the Defendants, arrived next and witnessed the Plaintiff resisting Cadet Parker.[19] Also believing that the Plaintiff was the person who had escaped Trooper Nelms, Trooper McEntyre attempted to assist Cadet Parker in handcuffing the Plaintiff.[20] The Plaintiff continued to resist.[21] Trooper Pyland, another of the Defendants, arrived on scene next, but the officers were still unable to handcuff the Plaintiff.[22] Trooper Nelms arrived last.[23] At this point the Plaintiff was still resisting being arrested.[24] At 3:30 A.M., therefore, Trooper McEntyre tased the Plaintiff.[25] The Plaintiff continued to resist.[26] Trooper McEntyre tased the Plaintiff a second time at 3:31 A.M.[27] Only then were the officers able to handcuff the Plaintiff.[28]

---

[19] Id. ¶¶ 29-30.

[20] Id. ¶¶ 29, 31.

[21] Id. ¶ 33.

[22] Id. ¶ 34.

[23] Id. ¶ 37.

[24] Id. ¶ 38.

[25] Id. ¶ 39.

[26] Id.

[27] Id. ¶ 40.

[28] Id.

At that point the Plaintiff stopped resisting.[29] The Plaintiff claims that one or more of the officers kicked his knee while they were attempting to handcuff him and that the kicking continued after he stopped resisting.[30]

The Plaintiff was examined by EMS and transported to the hospital by Trooper Nelms.[31] The Plaintiff arrived at the hospital at 4:52 A.M., complaining of knee pain and with an obvious deformity to his left knee.[32] Upon arrival at the hospital, the Plaintiff was uncooperative, aggressive, and yelling.[33] He was diagnosed with a posterior dislocation of the knee with arterial injury and a pulseless leg.[34] The Plaintiff was treated by Dr. Allison Burkett, who performed surgery on the Plaintiff's leg to attempt to relieve pressure.[35] During the surgery, Dr. Burkett observed a large amount of muscle death in the Plaintiff's leg.[36] Ultimately, after observing the Plaintiff following surgery, Dr. Burkett determined, with assistance of an orthopedic surgeon,

---

[29]    Vargas Dep. at 58.

[30]    Id. at 58-59.

[31]    Defs.' Statement of Facts ¶¶ 47-48.

[32]    Defs.' Mot. for Summ. J., Ex. G, p. 3.

[33]    Id.

[34]    Defs.' Statement of Facts ¶ 59.

[35]    Burkett Dep. at 15.

[36]    Id. at 17.

that the Plaintiff required an above-the-knee amputation.[37] Following this incident, the Plaintiff filed suit against Nelms, Parker, McEntyre, and Pyland in their individual capacities. The Defendants now move for summary judgment and to exclude some of Dr. Burkett's testimony.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[38] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[39] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[40] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[41] "A mere 'scintilla' of evidence

---

[37] Id. at 31.

[38] FED. R. CIV. P. 56(a).

[39] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[40] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[41] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[42]

### III. Discussion

#### A. Motion to Exclude

The Defendants move to exclude testimony from the Plaintiff's treating physician regarding the potential cause of his leg injury. The Defendants argue that Dr. Burkett was required to produce an expert report, but failed to do so, and that her testimony on causation should therefore be excluded. Federal Rule of Civil Procedure 26(a)(2)(B) requires a full expert report for witnesses who are "retained or specially employed to provide expert testimony in the case or ... whose duties as the party's employee regularly involve giving expert testimony."[43] The advisory committee notes to the 2010 amendment provide that a physician generally does not fall under subsection B and is therefore generally not required to provide a full expert report.[44] Instead, the expert disclosure regarding a physician must state the subject matter on which the physician is expected to present evidence and a summary of the facts and

---

[42] Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[43] Fed. R. Civ. P. 26(a)(2)(B).

[44] Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment.

opinions expected to be given by the physician.[45] A physician could be required to give a full expert report, but so long as her "opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no Subsection B report is required."[46]

Here, the Court finds that Dr. Burkett's opinions are not of the kind that require a full subsection B report. Dr. Burkett was not retained by the Plaintiff to opine on causation. She did not review facts or data outside of the course of her treatment of the Plaintiff to reach her opinions. She did not rely on hypotheticals, only on what she actually observed while treating the Plaintiff. And the Plaintiff properly disclosed her testimony under Rule 26(a)(2)(C). Specifically, the Plaintiff disclosed that Dr. Burkett would testify and that she would testify about her diagnosis and treatment of the Plaintiff, including causation of the injury and that it was consistent with crush trauma, but not a fall.[47] The Court therefore finds that Dr. Burkett was not required to produce an expert report under subsection B. Her testimony is based on observations and experience during the course of treatment of the Plaintiff, and that testimony was

---

[45] Fed. R. Civ. P. 26(a)(2)(C).

[46] Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-cv-1094-JEC, 2013 WL 1189493, at *12 (N.D. Ga. Mar. 21, 2013).

[47] Pl.'s Resp. to Defs.' Mot. to Exclude, Ex. 1, p. 8.

properly disclosed under subsection C. The Defendants' motion to exclude her testimony should be denied.

### B. Motion for Summary Judgment

The Defendants move for summary judgment on the Plaintiff's claim for excessive force under 42 U.S.C. § 1983. An excessive force claim brought under the Fourth Amendment is analyzed by determining whether the amount of force used was objectively reasonable.[48] The Supreme Court has held that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment."[49] It further noted that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation."[50] To analyze reasonableness, courts must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

---

[48] Graham v. Connor, 490 U.S. 386, 396 (1989).

[49] Id.

[50] Id. at 396-97 (internal citation omitted).

flight."[51] In addition, the Eleventh Circuit requires courts to consider "the need for the application of force, []the relationship between the need and amount of force used, and []the extent of the injury inflicted."[52] The Eleventh Circuit has also held that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."[53] Additionally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance."[54]

The facts here are largely not in dispute up to the point where the Plaintiff was handcuffed and ceased resisting. The Plaintiff admits that he was under the influence of alcohol, ran from police, and resisted arrest. He admits that the use of a taser to subdue him was not excessive. He admits that the officers were entitled to use some force to restrain him. But what matters here is how much force was necessary and when the force was used. The officers contend that they used force on the Plaintiff only until he was under control.[55] The officers also contend that the Plaintiff was

---

[51]  Id. at 396.

[52]  Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002).

[53]  Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008).

[54]  Id.

[55]  Defs.' Statement of Facts ¶ 45.

actively resisting being placed in handcuffs.[56] The Plaintiff, on the other hand, testified that the resistance he offered while on the ground was putting his hands over his face to protect himself and trying to keep from getting handcuffed.[57] He stated that despite this, the officers continually stomped on his leg.[58] Additionally, the Plaintiff stated that the officers continued to hit him after he was handcuffed.[59] These factual disputes preclude this Court from granting summary judgment. It is for a jury to decide exactly how much resistance the Plaintiff was offering and exactly how much force the officers used. A jury could find that the Plaintiff was resisting and the officers used a reasonable amount of force to restrain him. Or a jury could find that the Plaintiff was resisting but the officers used an unreasonable amount of force to restrain him. Additionally, if the jury finds that the officers used force after the Plaintiff was handcuffed, that would be excessive force under Hadley. And if the jury finds that some of the officers stood idly by and watched as others stomped on the Plaintiff's leg, those officers would be liable for their nonfeasance. At this point, however, the

---

[56]   Id. ¶¶ 26-27, 30, 33, 36, 38.

[57]   Vargas Dep. at 58-59.

[58]   Id. at 58.

[59]   Id. at 59.

record leaves open too many questions to grant summary judgment on the basis that there was not a constitutional violation.

The Defendants also argue that the evidence shows that stomping on the Plaintiff's leg could not have caused his injury and that summary judgment should therefore be granted in their favor. Given that this Court today denies the Defendants' motion to exclude Dr. Burkett's testimony on causation, there is a factual dispute between her testimony and that of the Defendants' expert. This Court therefore cannot grant summary judgment on the basis of causation. That issue must be resolved by a jury.

Finally, the officers argue that they are entitled to qualified immunity. Qualified immunity shields officers from liability for civil damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[60] As discussed, the Eleventh Circuit has held that gratuitous use of force on a handcuffed suspect is a constitutional violation.[61] If, therefore, a jury finds that the Plaintiff's version of events was true, specifically that the officers were stomping on his leg after he had been handcuffed, the officers would not be entitled to qualified immunity. If, however, a jury were to agree with the officers, and find that

---

[60]   Hope v. Pelzer, 536 U.S. 730, 739 (2002).

[61]   Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008).

all force stopped once the Plaintiff was handcuffed, the officers would be entitled to qualified immunity. The factual dispute discussed above precludes this Court from saying today whether the Defendants are entitled to qualified immunity for the time period after the Plaintiff was handcuffed. Additionally, it is clearly established that if any of the officers stood by and did nothing while other officers used excessive force, those officers would be liable under Hadley. Because it is undisputed that all four of the Defendants were around the Plaintiff after he was handcuffed, none of them are entitled to qualified immunity for that time period – a jury could find based on the record that they either used excessive force or watched it being used. Of course if the jury finds that no force was used, the officers then would be entitled to qualified immunity.

With respect to the time period before the Plaintiff was handcuffed, however, this Court finds that the officers are entitled to qualified immunity. The Plaintiff admits that he was resisting arrest up until the point that he was tased for a second time.[62] He admits that he was flailing around and trying to keep from getting handcuffed.[63] The Plaintiff cites several cases dealing with force used when a suspect is complying with commands and not resisting, but no cases that clearly established

---

[62]  Vargas Dep. at 58.

[63]  Id. at 59.

by the time of this incident in June of 2014 that officers would not be able to use force to restrain a suspect who is resisting arrest. In fact, the Supreme Court found in Graham that "not every push or shove" is excessive force.[64] This Court also declines to find that this incident is of the type that all officers would know to be wrong even without case law. The Plaintiff admits here that he was fighting with the officers.[65] He admits they were entitled to use a taser on him. In that scenario, this Court cannot say that there was clearly established law prohibiting the officers from using force to restrain a fighting suspect's leg. The motion for summary judgment should be granted as to all force used before the Plaintiff was placed in handcuffs, but should be denied for any force used after the Plaintiff was placed in handcuffs.

### IV. Conclusion

For the reasons stated above, the Defendants' Motion for Summary Judgment [Doc. 30] is GRANTED in part and DENIED in part and the Defendants' Motion to Exclude/Objection to Evidence of Plaintiff's Treating Physician [Doc. 38] is DENIED.

---

[64] Graham v. Connor, 490 U.S. 386, 396 (1989).

[65] Vargas Dep. at 70.

SO ORDERED, this 1 day of September, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge